**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Altaf AMLANI, Defendant–Appellant.**

**No. 98–50326.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1999.

Decided March 3, 1999.

David A. Katz, Katz & Associates, Los Angeles, California, for the defendant-appellant.

Ronald L. Cheng, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: LAY,[*] SCHROEDER, and HALL, Circuit Judges.

HALL, Circuit Judge:

Altaf Amlani appeals from the district court's decision holding that Amlani has waived the attorney-client privilege with respect to communications involving him, his wife, his current counsel, and his former counsel by asserting his claim of attorney disparagement. We affirm the decision of the district court.

## I.

Altaf Amlani was convicted by a jury in U.S. District Court on one count of conspiring to commit wire fraud, in violation of 18 U.S.C. § 371, and twenty counts of wire fraud, in violation of 18 U.S.C. § 1343. *See generally United States v. Amlani*, 111 F.3d 705, 710 (9th Cir.1997). The district court, Judge Rea presiding, sentenced Amlani on May 10, 1994, to fifty-seven months imprisonment, three years supervised release, restitution, a fine, and a special assessment. *See id.*

Amlani had retained attorney David Katz to represent him in various motions before the jury trial began. On July 13, 1993, however, Katz moved to withdraw from representation of Amlani, ostensibly because of Amlani's failure to pay Katz's fees.[1] Attorneys Don Howarth and Robert Corbin then represented Amlani throughout the entire trial.

Amlani raised numerous claims of error in the appeal of his sentence and conviction. *See id.* at 709. A panel of this Court found that one of the issues raised by Amlani, namely his claim of attorney disparagement, had merit. Specifically, Amlani contended that the government deprived him of his Sixth Amendment right to counsel when the prosecutor intentionally undermined Amlani's confidence in his chosen counsel, David Katz, by disparaging Katz in front of Amlani. *See id.* at 710. These comments had allegedly driven Amlani to fire Katz and hire new

inexperienced counsel, Don Howarth and Robert Corbin, which, according to Amlani, resulted in the imposition of an "[un]usually heavy sentence" for his crimes.

This Court remanded Amlani's case to the district court for a hearing to determine "(1) whether the government in fact disparaged Amlani's original counsel, Mr. Katz, in Amlani's presence; and (2) whether this disparagement, if it occurred, caused Amlani to retain different counsel for his further defense in this case." *Id.* 719–20. Amlani has since rehired his original attorney, David Katz, who has represented Amlani in the appeals of his conviction since June 22, 1994.

In response to this Court's remand, the district court heard arguments on whether the attorney-client privilege prevented the government from inquiring into communications between Amlani and his current and former attorneys regarding the circumstances of Katz's initial substitution. The government argued that Amlani had implicitly waived the privilege by asserting the disparagement claim. The district court agreed, ruling that "the attorney/client privilege is waived as far as I'm concerned regarding communications about ... Mr. Katz'[s] substitution."

As a result of the district court's decision, subpoenas have been issued to Amlani, his wife, Katz, Kachel, Howarth, and Corbin. The subpoenas require the production of "[a]ny and all documents, including but not limited to, correspondence, memoranda, notations and/or billing records which in any way refer or relate to" the decision to hire Donald Howarth and Robert Corbin or to discontinue representation by David Katz. The government also seeks testimony from these individuals regarding privileged conversations discussing Katz's substitution. Amlani now appeals from the district court's ruling.

## II.

## A.

We must first determine whether the district court's decision constitutes a final

---

[*] Hon. Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

[1]. Amlani now contends that Katz actually withdrew because the prosecutor's disparagement of Katz in Amlani's presence caused Amlani to lose confidence in Katz.

order that we may review pursuant to 28 U.S.C. § 1291. This determination should not be made lightly because the principle that appellate review should be deferred pending the final judgment of the district court is central to our system of jurisprudence. *See Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) ("All our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court.").

The district court's decision in this case is equivalent to a denial of a motion to quash subpoenas compelling disclosure of privileged communications. As noted by the Supreme Court in *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), and as reaffirmed in the Court's later cases, the general rule is

> that one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey.

*United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971).

As a result, the district court's attorney-client privilege ruling is not appealable under *Cobbledick* and its progeny because no party has yet been held in contempt. In order for us to have jurisdiction, therefore, the district court's decision must qualify under an exception to the final order rule.

■ One such exception to the finality requirement permits Amlani to immediately challenge a subpoena directed at a third-party custodian of Amlani's privileged documents. Amlani need not wait for the third party to first receive a contempt citation to bring an appeal. *See Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950

(1918); *see also Ryan*, 402 U.S. at 533, 91 S.Ct. 1580 (noting that the third-party custodian of documents "could hardly have been expected to risk a citation for contempt in order to secure [the appealing party] ... an opportunity for judicial review.").

The government concedes that, under this *Perlman* exception, we have jurisdiction to review the district court's discovery order with respect to former attorneys Howarth and Corbin. *See Silva v. United States (In re Grand Jury Subpoena Issued to Bailin )*, 51 F.3d 203, 205 (9th Cir.1995) ("the denial of a motion to quash a subpoena directed at the movant's former attorney is appealable.").

■ Despite Amlani's arguments to the contrary, however, the *Perlman* exception rule does not permit Amlani to challenge the district court's order with respect to his current counsel, David Katz. This Court has "previously held that the *Perlman* exception does not apply where the subpoena is directed at an attorney who is currently representing the party moving to quash the subpoena." *Id.* (citing *United States v. Niren (In re Grand Jury Subpoena Served Upon Niren )*, 784 F.2d 939, 941 (9th Cir.1986) (per curiam)). While nine other Circuits have espoused a contrary position, *see In re Grand Jury Subpoenas*, 123 F.3d 695, 698 (1st Cir. 1997) (collecting cases), the rule espoused in *Bailin* is clearly the law in this Circuit. We likewise decline Amlani's invitation to review the district court's ruling with respect to him and his wife under either section 1291 or the *Perlman* exception simply because their situation involves the same set of facts applicable to Howarth and Corbin.[2]

**B.**

■ Amlani next argues that regardless of whether we have jurisdiction under section 1291, we should review the district court's decision pursuant to our power of mandamus under the All Writs Act, 28 U.S.C. § 1651.[3]

---

2. Amlani briefly argues that the district court's decision should also be reviewed under the collateral order doctrine of *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We note, however, that "courts have refused interlocutory review of ... [discovery] orders under the collateral order doctrine." *Ad-*

*miral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1490 (9th Cir.1989).

3. 28 U.S.C. § 1651 states in relevant part:
   (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respec-

The Supreme Court has explained that "[t]he peremptory writ of mandamus has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will*, 389 U.S. at 95, 88 S.Ct. 269 (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)). The Court has stated further that "it is clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Id.* (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945)).

Nevertheless, claims of attorney-client privilege may, in appropriate situations, constitute valid grounds for the exercise of the court's mandamus powers. In *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486 (9th Cir.1989), the court reviewed an order of the district court requiring the production of statements claimed to be protected by the attorney-client privilege. *Admiral* held that "[b]ecause maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after

disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate.'" *Id.* at 1491 (quoting *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir. 1970) (per curiam), *aff'd by an equally divided Court*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971) (per curiam)); *see also von Bulow v. von Bulow (In re von Bulow )*, 828 F.2d 94, 99 (2d Cir.1987) (commenting on "the liberal use of mandamus in situations involving the production of documents or testimony claimed to be privileged."). Indeed, many other circuits have recognized, that at least in certain situations, claims of attorney-client privilege arise to a level meriting mandamus review.[4]

This Court has identified five primary factors to consider when determining whether an exercise of mandamus jurisdiction is proper:

(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-re-

tive jurisdictions and agreeable to the usages and principles of law.

4. *See In re General Motors Corp.*, 153 F.3d 714, 715 (8th Cir.1998) ("Where the district court has rejected a claim of attorney-client privilege, we will issue a writ of mandamus when the party seeking the writ has no other adequate means to attain the desired relief and the district court's ruling is clearly erroneous."); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir.1997) ("We find, as have several courts, that forced disclosure of privileged material may bring about irreparable harm."); *In re Regents of the University of California*, 101 F.3d 1386, 1391 (Fed.Cir.1996) (granting writ of mandamus where discovery order sought production of communications protected by the attorney-client privilege); *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 861 (3d Cir.1994) ("We find that the petitioners have no other adequate means to attain relief from the district court's order that compels the disclosure of privileged information and work product. In addition ... the district court has committed clear errors of law.... The petitioners' right to the writ [of mandamus] is ... indisputable."); *Boughton v. Cotter Corp.*, 10 F.3d 746, 750, 751 (10th Cir.1993) (noting that "[o]n four occasions we have granted writs of

mandamus to review claims of privilege," but declining to do so here because the case involved a dispute between private litigants and did not present a question of "substantial importance."); *In re W.R. Grace & Co.*, 984 F.2d 587, 589 (2d Cir.1993) (noting that "[o]n rare occasion ... we have used mandamus petitions to review discovery orders alleged to impair claims of attorney-client privilege," but declining to do so here because there was no novel issue); *In re Burlington Northern, Inc.*, 822 F.2d 518, 522 (5th Cir. 1987) (adopting position of "several courts [that] have concluded that mandamus is an appropriate method of review of orders compelling discovery against a claim of privilege."); *United States Dep't of Energy v. Brimmer*, 776 F.2d 1554, 1559 (Temp.Emer.Ct.App.1985) ("where substantial claims of privilege are overruled at the discovery stage ... this court possesses the discretion to review the production order by writ of mandamus."); *Harper & Row*, 423 F.2d at 492 ("because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice ... the extraordinary remedy of mandamus is appropriate.").

peated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman v. United States Dist. Court,* 557 F.2d 650, 654–55 (9th Cir.1977) (citations omitted).

█ The applications of these factors is by no means precise. There are frequently questions of degree, and conflicting indicators must often be balanced. *See id.* at 655; *see also Admiral,* 881 F.2d at 1491 ("Satisfaction of all five factors is not required. The factors serve as guidelines, a point of departure for our analysis of the propriety of mandamus relief.") (citation omitted).

Here, the *Bauman* factors are readily applied. First, Amlani and Katz do not have other satisfactory means of appeal. As in *Admiral,* "mandamus is the only method available to [petitioner] . . . to obtain review, prior to final judgment, of the district court's order compelling production of a statement [petitioner] . . . contends is privileged." *Admiral,* 881 F.2d at 1491.

Second, disclosure of the privileged communications will subject Amlani to damage not correctable on appeal. This Court has held that it is important to protect the attorney-client privilege and that an appeal after privileged communications are disclosed is an inadequate remedy. *See id.* at 1491. If the privileged statements are erroneously forced to be produced, Amlani "will be injured in a way not correctable on appeal." *Id.*

Third, and most importantly, in order for a petition of mandamus to be granted, the district court must have clearly erred. *See Calderon v. United States Dist. Court (Taylor),* 134 F.3d 981, 984 (9th Cir.1998) (noting that "the existence of clear error as a matter of law . . . is dispositive" in deciding whether to issue a writ of mandamus) (internal quotation omitted). Analysis of this factor is deferred until our consideration of the merits in Part III.

The fourth *Bauman* factor is not satisfied in this case, because there has been no showing of a pattern of errors by the district court. As *Admiral* noted, however, "[t]he

fourth and fifth *Bauman* factors are rarely, if ever, present at the same time." *Id.* Here, there is at least an arguable claim that the fifth *Bauman* factor has been satisfied because the issue is sufficiently novel and important-whether assertion of a claim of attorney disparagement results in a waiver of the attorney-client privilege. *See Amlani,* 111 F.3d at 711 ("We are faced with an issue not squarely presented to previous courts: does disparagement of counsel in front of defendant and in the counsel's presence violate the Sixth Amendment if it causes the defendant to retain different counsel?"). As a result, based on the facts of this case, it may be proper to grant a writ of mandamus if the district court's decision was clearly erroneous.

### III.

█ We determine, however, that the district court did not err in finding a waiver of the attorney-client privilege. This Court reviews de novo whether a party has waived the attorney-client privilege. *See United States v. Plache,* 913 F.2d 1375, 1379 (9th Cir.1990).

█ As an initial matter, the attorney billing records requested in the challenged subpoenas are not protected by the attorney-client privilege. This Court has stated that "[o]ur decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." *Clarke v. American Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir.1992). As a result, the government has an undisputed right to view these documents.

█ The district court's decision reaches much further than simple billing records, however. The subpoenas require the production of all "correspondence, memoranda, notations and/or billing records" that relate to the initial substitution of Katz. Given this broad scope, the subpoenas certainly appear to intrude on privileged material. *See* Fed. R.Evid. 501; *Plache,* 913 F.2d at 1379 n. 1 (defining the attorney-client privilege). In

addition, witnesses will be asked about the substance of conversations protected by the attorney-client privilege. Even the requested billing records are subject to the privilege to the extent that they represent "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law." *Clarke*, 974 F.2d at 129.

■ We must therefore examine whether Amlani has waived the attorney-client privilege by bringing his claim of attorney disparagement. This Court employs a three-pronged test to determine whether a waiver has been effected. First, the court considers whether the party is asserting the "privilege as the result of some affirmative act, such as filing suit." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir.1995) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975)). Second, the court examines whether "through this affirmative act, the asserting party puts the privileged information at issue." *Id.* Finally, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense." *Id.*

Here, the district court will examine in an evidentiary hearing "(1) whether the government in fact disparaged Amlani's original counsel, Mr. Katz, in Amlani's presence; and (2) whether this disparagement, if it occurred, caused Amlani to retain different counsel for his further defense in this case." *Amlani*, 111 F.3d at 719–20.

In light of this inquiry, the first two prongs of the *Lane/Hearn* test have been satisfied. First, Amlani raised the issue of attorney disparagement in his motion to vacate the conviction. Second, by claiming that he discharged Katz because of the prosecutor's disparaging remarks, Amlani put the communications between him and Katz, Howarth, and Corbin in issue insofar as they related to Amlani's reasons for changing counsel.

■ Third, the government has demonstrated a real need for the evidence, especially in deciding the question of whether the allegedly disparaging statements caused Am-

lani to seek new counsel. It is true that "[p]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." *Southern Calif. Gas Co. v. Public Utilities Comm'n*, 784 P.2d 1373, 1381 (Cal.1990) (internal quotation omitted). When the sought-after evidence is "only 'one of several forms of indirect evidence' about an issue," the privilege has not been waived. *Hamilton v. Lumsden (In re Geothermal Resources Int'l, Inc.)*, 93 F.3d 648, 653 (9th Cir.1996) (per curiam) (quoting *Rockwell Int'l Corp. v. Superior Court*, 26 Cal.App.4th 1255, 1268, 32 Cal. Rptr.2d 153 (1994) (quoting *Mitchell v. Superior Court*, 37 Cal.3d 591, 208 Cal.Rptr. 886, 691 P.2d 642, 650 (1984))).

We have previously held, however, that "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, the [attorney-client] privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Here, Amlani's claim of disparagement requires disclosure of communications relating to the Katz substitution. Amlani has already asserted that the prosecutor's "disparaging remarks caused me to sever my attorney-client relationship with Mr. Katz.... Before those disparaging remarks, I had a high opinion of Mr. Katz, ... and I intended to hire him for ... trial." To defend against this contention, the government must have access to communications that describe events surrounding Katz's initial withdrawal from representing Amlani. Simply put, Amlani cannot assert that certain factors caused him to discharge his attorney and then invoke the attorney-client privilege to prevent the government from examining the situation further. We have made it clear that " '[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield.' " *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir.1997) (quoting *Chevron*, 974 F.2d at 1162).

Amlani contends that there are numerous other sources of evidence to which the government could turn to defend against Amlani's disparagement claim. Amlani speculates that the government could refer to contem-

poraneous notes by government prosecutors, interview witnesses to the allegedly disparaging statements, attempt to collect impeachment information on Amlani's witnesses, and generally consult the surrounding facts of the case.

But these alternative sources of evidence would be of little, if any, value in evaluating whether the prosecutor's statements caused Amlani to retain other counsel. If the government has no access to the subpoenaed documents and other communications because of the privilege, it would be forced to rely almost exclusively on Amlani's and Katz's characterization of events.

In fairness, to defend against these charges, the government must have access to Amlani's communications with counsel to determine whether in fact the disparaging comments caused the substitution of counsel. Amlani "cannot invoke the attorney-client privilege to deny [the government] ... access to the very information that [the government] ... must refute in order to demonstrate that" Amlani did not discharge Katz because of the prosecutor's allegedly disparaging statements.[5] *Chevron,* 974 F.2d at 1163.

We therefore find that the district court committed no error in finding a waiver of the attorney-client privilege. In reaching this determination, however, we trust that the district court will conduct an *in camera* review of all privileged documents so that only those documents or portions of documents relating to the initial withdrawal of Katz and the retention of Howarth and Corbin are disclosed. *See Kerr v. United States Dist. Court,* 426 U.S. 394, 405, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) ("*in camera* review of ... documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioners' claims of irrelevance and privilege and plaintiffs' asserted need for the documents is correctly struck.").

Based on this understanding, we AFFIRM the decision of the district court insofar as it found a waiver of the attorney-client privilege between attorneys Corbin and Howarth and Amlani relating to the initial substitution of Katz. We DENY Amlani's petition for a writ of mandamus because the district court did not clearly err in finding a waiver of the attorney-client privilege between attorney Katz and Amlani, and to the extent applicable, Amlani's wife.

---

5. In reaching this conclusion, we necessarily reject Amlani's contention that by calling Katz and others as fact witnesses he has not waived the attorney-client privilege. The appropriate inquiry is whether, by asserting his claim of attorney disparagement, Amlani waived the attorney-client privilege for communications relating to Katz's substitution. We therefore focus on whether the disparagement claim itself requires disclosure of protected communications. *See Chevron,* 974 F.2d at 1162; *see also Southern Calif. Gas Co.,* 265 Cal.Rptr. 801, 784 P.2d at 1380 (in upholding claim of privilege, noting that "there is no evidence to indicate that the information [appellant] ... claims is privileged is vital to a fair adjudication in this proceeding.").