**SG COWEN SECURITIES CORPORATION; Rehan Syed, Petitioners,**

v.

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, Respondent,**

**Thomas Randall, et al., on behalf of themselves and all others similarly situated, Real Party in Interest.**

**Rational Software Corporation and Paul D. Levy, Petitioners,**

v.

**United States District Court for the Northern District of California, Respondent,**

**Tom, et al., on behalf of themselves and all others similarly situated, Real Party in Interest.**

**Nos. 98–71501, 98–71503.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1999.

Decided Aug. 30, 1999.

Boris Feldman, Wilson Sonsini Goodrich & Rosati, Palo Alto, California, for petitioners Rational Software Corporation and Paul D. Levy.

Philippe M. Salomon, Willkie Farr & Gallagher, New York, New York and Lenard Weiss, Steefel, Levitt & Weiss, San Francisco, California, for petitioners SG Cowen and Rehan Syed.

Lionel Z. Glancy, Law Offices of Lionel Z. Glancy, Los Angeles, California, for the plaintiffs-real parties in interest.

Before: WIGGINS, FERNANDEZ, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

The defendants in this securities class action lawsuit seek a writ of mandamus vacating the district court's order for limited discovery. We hold that the order violated the discovery stay provision of the Private Securities Litigation Reform Act of 1995, and grant the writ.

I

The plaintiffs filed this class action lawsuit alleging violations of federal and state securities law. The complaint alleges that on the morning of October 8, 1997, Rational Software Corporation ("Rational") Chief Executive Officer Paul Levy told SG Cowen Securities Corporation ("Cowen") analyst Rehan Syed that Rational's earnings would be lower than expected. Syed then allegedly alerted Cowen's customers, who in turn began selling Rational shares. Rational's stock price, which began the trading day at $15 ⅙, deteriorated to $11 ⅞ by mid-afternoon when trading in Rational stock was halted. The stock price continued its downward spiral the following day, closing near $9 per share. Trading vol-

ume was unusually high; on the day of the Syed conversation, volume increased five-fold over Rational's three-month daily average. Plaintiffs filed this class action lawsuit against defendants Rational, Levy, Cowen, and Syed days later.

The defendants moved to dismiss the action, contending that the plaintiffs had failed to plead the requisite scienter and personal benefit elements sufficiently to state a section 10(b) violation, and that the complaint did not state a cause of action under California securities law because privity was not alleged. The district court granted the motions to dismiss, holding that the plaintiffs had not provided any factual basis for their contention that Levy had received a personal benefit for tipping Syed, and that the complaint did not contain any facts demonstrating that Syed knew or should have known that the disclosure constituted a fiduciary breach. The court granted plaintiffs leave to file an amended complaint.

Plaintiffs subsequently filed a motion for leave to take limited discovery for the purpose of uncovering facts to support their allegations. The court granted the request, and defendants filed this petition for a writ of mandate.

## II

At issue in this case is the scope of the discovery stay under the Private Securities Litigation Reform Act of 1995 ("Act"), Pub.L. No. 104–67 (codified as amended at 15 U.S.C. §§ 77a et. seq.). The Act was passed in response to several perceived abuses in securities litigation, including discovery abuses. As the Third Circuit recently observed:

> The purpose of the Act was to restrict abuses in securities class-action litigation, including: (1) the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability; (2) the targeting of "deep pocket" defendants; (3) the abuse of the discovery process to coerce settlement;

and (4) manipulation of clients by class action attorneys.

*In re Advanta Corp. Secs. Litig.*, 180 F.3d 525, 530–31 (3d Cir. 1999).

The Act's reforms included the institution of heightened pleading standards. *See* 15 U.S.C.A. § 78u–4(b)(1)–(2) (West Supp.1999); H.R. Conf. Rep. No. 104–369, 104th Cong. 1st Sess. at 41 (1995) *reprinted in* U.S.C.C.A.N. Sess. 740. In addition, the Act mandated a stay of discovery during the pendency of a summary judgment or dismissal motion. Section 78u–4(b)(3)(B) provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C.A. § 78u–4(b)(3)(B) (West Supp. 1999).

This section was "intended to prevent unnecessary imposition of discovery costs on defendants." H.R. Conf. Rep. No. 104–369, 104th Cong. 1st Sess. at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. Sess. 731. As the House and Senate managers further noted in their Joint Explanatory Statement of the Committee of Conference:

> The cost of discovery often forces innocent parties to settle frivolous securities class actions. According to the general counsel of an investment bank, "discovery costs account for roughly 80% of total litigation costs in securities fraud cases." In addition, the threat that the time of key employees will be spent responding to discovery requests, including providing deposition testimony, often forces coercive settlements....

> The Conference Committee provides in new section 27(b) of the 1933 Act and new section 21D(b)(3) of the 1934 Act that courts must stay all discovery pending a ruling on a motion to dismiss,

unless exceptional circumstances exist where particularized discovery is necessary to preserve evidence or to prevent undue prejudice to a party. For example, the terminal illness of an important witness might require the deposition of the witness prior to the ruling on the motion to dismiss.

*Id.* at 736.

In this case, plaintiffs requested discovery to learn the identity of Rational traders on October 8, 1998, and to determine the nature of the relationship between Cowen and Rational. They argued that failing to allow the requested discovery would shield the defendants from liability, causing them the "undue prejudice" contemplated by § 78u–4(b)(3)(B).

In granting the discovery motion in part, the district court reasoned that:

a securities class action plaintiff may establish the existence of undue prejudice by (1) alleging specific facts which while insufficient in and of themselves to meet the heightened pleading requirements of the Reform Act nonetheless give rise to a strong and credible suspicion that a defendant may be liable for securities fraud, and (2) demonstrating a reasonable probability that such defendant is likely to avoid liability absent discovery. If this threshold showing is made, a plaintiff must then show that the requested discovery is sufficiently limited and particularized that permitting the discovery will not defeat the express intent of the Reform Act by placing an undue legal and economic burden on the defendant.

Applying the test, the district court then explained:

Plaintiffs have alleged narrow claims based upon the disclosure of specific inside information by a specific person on a specific date and the subsequent "dumping" of large blocks of Rational stock on that same date. For the most part, Plaintiff's allegations are supported by specific facts which at a minimum give rise to an appearance of improprie-

ty on the part of Levy and Syed. The consolidated complaint was dismissed not because Plaintiffs' claims as a whole were vague and conclusory but primarily because Plaintiffs failed to allege facts tending to show that Levy actually received a personal benefit from disclosing the information or that Syed actually knew that Levy's disclosure was a breach of fiduciary duty, elements without which Plaintiffs cannot state a cause of action.... As Plaintiffs point out, facts supporting [their] theory are of a type likely to be solely within Defendants' possession. Under these circumstances, even though Plaintiffs have alleged significant and specific facts in support of their insider trading claims, there is a reasonable probability that Defendants will be shielded from liability unless Plaintiffs are permitted to take limited discovery regarding the relationship between Cowen and Rational.

The district court thereupon permitted plaintiffs to propound ten interrogatories upon Cowen to inquire into the relationship between Levy and Cowen, and permitted plaintiffs to issue subpoenas on the NASD and brokerage firms to determine who sold Rational shares on October 8, 1997. The court denied the rest of the motion for discovery because it was not sufficiently particularized.

■ Distilled to its essence, the district court granted plaintiffs leave to conduct discovery so that they might uncover facts sufficient to satisfy the Act's pleading requirements. This is not a permissible reason for lifting the discovery stay under the Act. As we plainly stated in *Medhekar v. United States Dist. Ct.*:

Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed.

99 F.3d 325, 328 (9th Cir.1996).

■ The "Stay of Discovery" provision of the Act clearly contemplates that "dis-

covery should be permitted in securities class actions *only after the court has sustained the legal sufficiency of the complaint.*" S.Rep. No. 104–98, at 14 (1995) *reprinted in* U.S.C.C.A.N. 693 (emphasis added). The Act requires the trial court to dismiss the complaint if it fails to satisfy the Act's heightened pleading standards. *See* § 78u–4(b)(3)(A). Thus, as a matter of law, failure to muster facts sufficient to meet the Act's pleading requirements cannot constitute the requisite "undue prejudice" to the plaintiff justifying a lift of the discovery stay under § 78u–4(b)(3)(B). To so hold would contravene the purpose of the Act's heightened pleading standards. Accordingly, we conclude that the district court clearly erred in granting the limited discovery request.[1]

## III

■ Determining that the district court erred in granting the discovery request does not end our inquiry, for we must also consider whether issuance of a writ of mandamus is appropriate. Mandamus is "an extraordinary remedy limited to exceptional circumstances." *Wilson v. United States Dist. Ct.,* 103 F.3d 828, 829 (9th Cir.1996) (internal citation and quotation marks omitted). The burden is on the petitioner to show that his right to the writ is "clear and indisputable." *Calderon v. United States Dist. Ct.,* 103 F.3d 72, 74 (9th Cir.1996).

■ We apply a five-factor test, first articulated in *Bauman v. United States Dist. Ct.,* 557 F.2d 650 (9th Cir.1977), to determine whether the exercise of its mandamus jurisdiction is proper. *See United States v. Amlani,* 169 F.3d 1189, 1193–94 (9th Cir.1999). The factors are:

(1) The party seeking the writ has no other adequate means, such as a direct

appeal, to attain the relief he or she desires.

(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. . . .

(3) The district court's order is clearly erroneous as a matter of law.

(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5) The district court's order raises new and important problems, or issues of law of first impression.

*Amlani,* 169 F.3d at 1193–94. The factors should be weighed together based on the facts of the individual case. *See Calderon v. United States Dist. Ct.,* 163 F.3d 530, 534 (9th Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 1377, 143 L.Ed.2d 535 (1999).

■ Here, application of the *Bauman* factors demonstrates that the writ should be granted. First, defendants have no other adequate means to obtain the relief desired. They may not directly appeal the discovery order because discovery orders are not final, appealable orders under 28 U.S.C. § 1291. *See Admiral Ins. Co. v. United States Dist. Ct.,* 881 F.2d 1486, 1490 (9th Cir.1989). Appellate review pursuant to 28 U.S.C. § 1292(b) is unavailable because the district court did not certify the issue for appellate review. *See* 28 U.S.C.A. § 1292(b) (West Supp.1999). Neither does Federal Rule of Procedure 54(b) apply, as this rule applies to situations in which final judgment is entered as to some but not all claims or parties. *See* Fed.R.Civ.P. 54(b). Although Cowen could refuse to comply with the discovery orders directed at it and then appeal from the contempt order, the majority of discovery is directed at third-parties who could not be expected to do so. *See In re Grand Jury Subpoena 92–1(SJ),* 31 F.3d 826, 829

---

1. We also reject plaintiffs' argument that the district court should have permitted discovery because plaintiffs asserted state claims. As the district court correctly explained, "Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims."

(9th Cir.1994). Thus, the first *Bauman* factor indicates that the defendants have no other adequate remedy.

█ Second, a petitioner is damaged or prejudiced if his claim will be moot on appeal. Compliance with a discovery order moots an appeal of that order. *See Medhekar v. United States Dist. Ct.,* 99 F.3d 325, 326–27 (9th Cir.1996). Thus, the second *Bauman* factor also indicates that the petition should be granted.

Third, as we have previously discussed, the district court clearly erred in holding that a plaintiff may obtain discovery under the undue prejudice exception to 15 U.S.C. 78u–4(b)(3)(B) in order to plead a sufficient complaint.

Fourth, defendants concede that the district court's order is not an "oft-repeated error" that "manifests persistent disregard of the federal rules." Fifth, plaintiffs concede that there is "scant appellate authority addressing the Act" and so that the order raises issues of first impression.

In short, four of the five *Bauman* factors suggest that the petition be granted. Only the fourth—whether the district court's order is an "oft-repeated error"— suggests otherwise, but this court has noted that "[t]he fourth and fifth *Bauman* factors are rarely, if ever, present at the same time." *Amlani,* 169 F.3d at 1194.

Accordingly, we conclude the writ should issue.

PETITION GRANTED