**In re SOUTHERN PACIFIC FUNDING CORPORATION SECURITIES LITIGATION.**

No. Civ. 98–1239–MA.

United States District Court, D. Oregon.

Dec. 7, 1999.

Gary Berne, Timothy Dejong, Stoll Stoll Berne Lokting & Schlacter P.C., Portland, OR, William Lerach, Alan Schulman, Debra Wyman, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Edward Dietrich, Los Angeles, CA, Stuart Savett, Barbara Podell, Savett Frutkin Podell & Ryan, P.C., Philadelphia, PA, Vincent Cappucci, Entwistle & Cappucci LLP, New York City, Jordan Lurie, Elizabeth Lin, Weiss & Yourman, Los Angeles, CA, for plaintiffs.

Eric Todderud, Heller Ehrman White & McAuliffe, Portland, OR, Daniel Dunne, Jr., Heller Ehrman White & McAuliffe, Seattle, WA, Thomas Dulcich, Schwabe Williamson & Wyatt PC, Portland, OR, Paul George, Foster Pepper Shefelman LLP, Portland, OR, Peter Rosen, Mayer Brown & Platt, Los Angeles, CA, for ICII defendants.

Joseph C. Arellano, Kennedy Watts Arellano & Ricks LLP, Portland, OR, for defendant KPMG.

## OPINION & ORDER

MARSH, District Judge.

This is the third time that I have conducted a painstaking review of the plaintiffs' complaint to determine if the allegations of fraud are sufficient to withstand dismissal under the Private Securities Litigation Reform Act (PSLRA). This latest round of motions comes at my prompting. Since my last opinion, two significant Ninth Circuit decisions were issued that clearly affect my prior holdings. While I did not require the parties to submit motions for reconsideration, I did hold a conference call where I explained that I was aware of these new decisions and that I encouraged that such motions be filed to avoid creating unnecessary issues for appeal. Several motions followed and this opinion addresses those motions.

■ First, plaintiffs seek to file a Fourth Amended Complaint which adds greater detail to their fraud allegations. Following the briefing on this motion, plaintiffs sought to amend their complaint again to include allegations premised upon recently delivered e-mail evidence from defendant ICII. Defendants oppose these two motions on grounds that plaintiffs should not be permitted to rely upon evidence gathered from the discovery process in light of *S.G. Cowen Sec. Corp. v. United States District Court for the Northern District of California,* 189 F.3d 909 (9th Cir. 1999) and the underlying purposes of the PSLRA.

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." I find that the *Cowen* decision does nothing to alter that basic precept. The facts in this case are markedly different than those in *Cowen* since the discovery stay was never lifted for the purpose of giving plaintiffs the opportunity to bolster their complaint. Instead, the stay in

this case was lifted because I denied, in large measure, defendants' dismissal motions based upon what I considered the applicable standards at that time.[1] To extend *Cowen* as the defendants suggest would create an unnecessary fiction and would require that the court ignore relevant allegations. Further, I fail to see how the underlying purposes of the PSLRA would be served since the expense of discovery has already taken place. Thus, plaintiffs' motions to file a fourth amended complaint and to supplement that amendment are GRANTED.

Second, plaintiffs seek reconsideration of my order dismissing their section 11 and section 15 claims under the 1933 Securities Act based upon *Hertzberg v. Dignity Partners*, 191 F.3d 1076 (9th Cir.1999).[2] In *Hertzberg*, the court held that claims for material omissions in registration statements brought under section 11 of the 1933 Securities Act may be maintained by "any person acquiring a security." [3] Thus, the court concluded that plaintiffs could maintain a section 11 claim for after-market transactions. There is no dispute that this holding effectively overrules my prior order dismissing plaintiffs' section 11 claims. While defendants argue that there are other bases for dismissal, clearly the original basis for my ruling must be vacated.

██ Defendants now seek dismissal on the ground that plaintiffs' allegations of falsehoods in an October 31, 1997 Registration statement for a single public offering of SPFC 11.5% Senior Notes fail to meet the pleading requirements of Fed. R.Civ.P. 9(b). There is no dispute that the PSLRA bears no application to the 1933 Securities Act, nor is there any debate about the fact that plaintiffs need not

prove scienter to sustain a section 11 claim.[4] Plaintiffs first argue that defendants' motions should be denied under the law of the case doctrine since I sustained the same core allegations alleged in plaintiffs' section 10(b) claim in prior motions to dismiss. Because the basis for my dismissal of the section 11 claims was limited to plaintiffs' standing, I find that my consideration of the adequacy of the pleadings is not barred by the law of the case doctrine. Although there is a factual overlap, the issues under both claims differ.

Plaintiffs also argue that their claims should not be subject to 9(b) because they sound in negligence rather than fraud and, in any event, the section 11 claims satisfy Rule 9(b).

██ In support of their assertion that 9(b) should apply to plaintiffs' section 11 claims, defendants rely upon *In Re Stac Electronics Securities Litigation*, 89 F.3d 1399 (9th Cir.1996). In *Stac*, the plaintiffs asserted securities violations under section 10(b) of the 1934 Act and section 11 of the 1933 Act premised upon the same allegations of fraud. With their section 11 claim, plaintiffs argued that Rule 9(b) pleading should not apply since there is no scienter requirement under section 11. The court rejected this argument, finding that Rule 9(b) applies when claims brought under section 11 are "grounded in fraud."

At the outset, I note that quantifying plaintiffs' claims in this action is a difficult task. The defendants argue on the one hand that plaintiffs have failed to state claims of fraud under section 10(b) and then argue that plaintiffs' claims are grounded in fraud under section 11. While I acknowledge that this is not an

1. With the pendency of these new dismissal motions, discovery has been stayed again.

2. Plaintiffs have withdrawn their motion for reconsideration of my dismissal of their section 12 claims under the 1933 Act.

3. Like § 10(b) of the 1934 Securities and Exchange Act, section 11 provides a cause of

action for false claims. Unlike § 10(b), however, a § 11 claim applies only to misstatements or material omissions included within a registration statement.

4. The section 15 claims assert control person liability against individual defendants Howard, Guy, Makowiecki, Snavely and ICII.

outright contradiction, it does call the argument into question.

I find that *Stac* is distinguishable from the instant case for several reasons. First, the core allegation in *Stac* was that defendant failed to disclose knowledge that a significant competitor was about to enter its market. This concerns a deliberate choice not to disclose allegedly material, adverse information. By contrast, the core allegation in this case is that SPF failed to alter key assumptions in its accounting relative to pre-payment and delinquency rates. At paragraph 6 of the Fourth Consolidated Amended Complaint, plaintiffs allege that defendants' assumptions for credit losses were not "reasonable." At paragraph 7, plaintiffs assert that assumptions were not changed in a "prudent" manner. Plaintiffs also assert, generally, that defendants had "inadequate" internal controls and that they violated generally accepted accounting principles. All of these allegations sound far more in negligence than they do in fraud.[5] Accordingly, I hold that plaintiffs need not satisfy the pleading standards of 9(b) to sustain a claim under section 11. This same holding applies to plaintiffs claims under section 15 against the individuals who signed the registration statement.

■ I further find that plaintiffs have fairly alleged a claim that defendants included false information in the October 31, 1997 registration statement for the single public offering of SPFC 11.5% Senior Notes. Plaintiffs claim that record earnings should have been reported as losses had prepayment and delinquency rates been properly considered. Thus, ICII defendants' motions to dismiss are DENIED as to the section 11 and 15 claims.

■ The independent auditor, KPMG, has been included as a defendant in the section 11 claim. However, KPMG did not audit SPF's quarterly financial statements and the October 1997 registration statement relied upon unaudited financial reports. Plaintiffs have argued that KPMG should still remain liable because it permitted its 1996 financial statement to be republished with the 1997 registration statement. Subsection (a)(4) of § 11 provides for liability against "every accountant ... who has with his consent been named as having prepared or certified **any** part of the registration statement." (emphasis added). I find that the statute is broad enough to encompass such a claim against KPMG. Thus, KPMG's motion to dismiss the § 11 claim is denied as well.

The analysis of the viability of plaintiffs' section 10(b) claims presents the greatest challenge. On August 4, 1999, a divided panel of the Ninth Circuit issued *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970 (1999). The factual context of *Silicon Graphics* is far different than that present with this case. Stockholders filed a class action claiming violations of section 10(b) of the 1934 Act after the price of Silicon's stock dropped due to lower than anticipated earnings. Plaintiffs alleged that internal company reports, in existence at the time defendants made positive public statements, put company representatives on notice of production problems that would clearly impact earnings estimates. On the surface, *Silicon* appears to be one of those cases specifically targeted by Congress with its enactment of the PSLRA. Silicon was a sound company that simply experienced some production difficulties which meant that revenue growth was 33% rather than 40%.

By contrast, SPF was reporting record earnings in July of 1998, less than three months prior to filing for bankruptcy protection under Section 11 of the Bankruptcy Code. SPF insiders acknowledged troubles in the industry and assured investors that, unlike other funding companies, SPF had

---

**5.** The real issue under the § 10(b) claim is, and always has been, whether plaintiffs have plead sufficient facts to demonstrate such an extreme degree of negligence (deliberate recklessness) to constitute fraud as it is defined by the 1934 Act. The claims in this case are not, nor have they ever been that defendants were committing the kind of classic, blatant, criminal fraud akin to selling swamp land in Florida.

adequately factored in prepayment and delinquency rates. Plaintiffs allege that SPF's demise was caused by the very falsehoods and material omissions which form the basis for this complaint. Allegations in *Silicon* that corporate insiders deliberately ignored internal reports about production problems that resulted in a 7% decrease in growth is a far cry from allegations that SPF defendants ignored significant pre-payment and delinquency data to such an extent that the company ceased to exist as a going concern just weeks following glowing predictions and statements of financial soundness. This is not a case in which an otherwise healthy company has been targeted by professional securities' plaintiffs due to a stock dip.

■ With this background in mind, I have carefully studied *Silicon* and have come to the conclusion that the Ninth Circuit's decision makes three critical holdings that invalidate my prior ruling on defendants' motions to dismiss plaintiffs' 10(b) claims. First, *Silicon* holds that the level of scienter required to sustain a 10(b) claims is that of "deliberately reckless or conscious misconduct," "that strongly suggests actual intent." *Id.* at 973, 979. Plaintiffs claim that this holding merely constitutes a restatement of the Ninth Circuit's holding in *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir.1990) (en banc). Defendants argue that the Ninth Circuit has raised the standard. There is language in the court's opinion that suggests that it is merely restating the standard set forth in *Hollinger*. *See* 183 F.3d at 975 ("We used [in *Hollinger*] the words 'known' and 'must have been aware,' which suggest consciousness or deliberateness"). However, the *Silicon* court expressly provides that, as a threshold issue, it must determine the appropriate mental state necessary to sustain a 10(b) claim in light of the PSLRA. Rather than simply citing *Hollinger*, the court analyzes Supreme Court and legislative history to reach the "deliberate recklessness" standard. Further, the majority fails to respond to the dissent's objection that the court improperly raised the mental state requirement.

The dissent from the refusal of the court to take the case *en banc* also assumes that the majority opinion raised the standard, as have other subsequent circuit decisions. *Silicon*, 195 F.3d 521 (9th Cir.1999) (dissent from denial of reh'g); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1284 n. 21 (11th Cir.1999). Based upon the foregoing, I find that the *Silicon* court raised the substantive standard applicable to § 10(b) claims to that of deliberate recklessness and that "deliberate recklessness" constitutes a higher degree of recklessness than previously contemplated. I further find that "deliberate recklessness," means that the defendants must have acted with full knowledge of the risks of the consequences of their actions in a manner akin to that of a driver that attempts to speed across railroad tracks in front of a rapidly approaching and clearly visible oncoming train. This formulation takes into account the level of risk as measured against the severity of the consequences and the knowledge of the defendant of both factors.

■ The second critical holding of *Silicon* is its rejection of the motive and opportunity test as a sufficient basis, standing alone, to meet the deliberate reckless standard. I raised the factual context of *Silicon* at the outset because, although the court does not expressly address the materiality element of a 10(b) fraud claim, I find that materiality and factual context are critical factors in examining the adequacy of pleading scienter. If a corporate president receives a report that his largest factory has burned to the ground and nevertheless attends a stock holder meeting and publicly claims that there will be no slow down in a production schedule, the degree of materiality of the omission must have a bearing upon just how wrong his public statement was at the time. The greater the materiality, the greater inference of scienter. Thus, while motive and opportunity are insufficient to give rise to a strong inference of scienter standing alone, motive and opportunity

coupled with highly material misrepresentations or omissions may well satisfy the standard. It is one thing to ignore reports of potential bad weather; it is quite another to set sail in the face of a storm.

■ Third, *Silicon* raises the specificity standard for pleading fraudulent intent to an unprecedented level of fact pleading. Identifying specific internal reports that contradict contemporaneous public statements is insufficient to meet the new pleading standard. Instead, plaintiffs must plead the source of their information, how they learned of the reports, who drafted them, and must supply a detailed description of the report itself. *Id.* at 984. Simply identifying the content of the report, the officers who received them and the department that prepared them is insufficient. *Id.* at 998, n. 24 (Browning, J. dissenting). Further, the pleaded evidence of scienter must do more than "suggest" an inference of fraud; it must "strongly suggest" an inference of fraud. *Id.* at 983.

Finally, the complaint must address timing by specifying why the statements were false "at the time they were made." *Id.* at 984. The Ninth Circuit has recently emphasized that the temporal proximity between "positive statements" and "poor performance," standing alone, are insufficient to establish falsity under Rule 9(b). *Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir.1999).[6]

Thus, I have reviewed plaintiffs' Fourth Amended Complaint (as supplemented) with these inquiries in mind: (1) have plaintiffs pleaded facts giving rise to a strong inference of deliberately reckless conduct; and (2) do the evidentiary pleadings meet the heightened specificity standard utilized by the Ninth Circuit?

■ Overall, the complaint provides ample detail regarding the allegedly false, positive company statements issued during the class period. The issue then is whether plaintiffs have provided sufficient detail explaining why the challenged statements were false when made.

If the paragraphs of the fourth amended consolidated complaint and its supplement are analyzed individually and in isolation, they fail to meet the specificity standard of *Silicon.* Each paragraph does not provide author, date, content and how the plaintiffs came to discover the information. However, the overall presentation of the complaint alleges that defendants regularly received and reviewed reports regarding pre-payment rates and delinquencies. These reports were distributed prior to and throughout the class period and the reports demonstrated that the defendants were made aware of the fact that the assumptions they used to predict pre-payments and delinquencies were far off the mark. So far off the mark that revenue was over-stated by 300% and failing loans were in the 45–50% range. Further, the complaint alleges that these deficiencies were long-standing. Thus, the fact that the nature of the business required that defendants make predictions about future loan performance does little to address the defendants' alleged failure to account for facts in hand demonstrating that their "key" assumptions were unrealistic to a degree that threatened the company's very solvency.

Overall, the complaint paints a picture of a group of corporate insiders who knew that the entire mortgage lending industry was facing significant hardships due to the drop in lending rates. The complaint further reveals that the defendants attempted to distinguish SPF from others in the in-

**6.** In *Yourish v. California Amplifier,* 191 F.3d 983 (9th Cir.1999), the court upheld dismissal of a § 10(b) securities fraud claim for failure to satisfy Rule 9(b). The court explained that a plaintiff must do more than claim that public statements are inconsistent with internal reports; the complaint must specifically identify those reports. The court also noted that since the complaint failed under 9(b), it need not address the heightened pleading standard of the PSLRA. Ostensibly, I assume that is why the court failed to cite to or apply the holding of *Silicon Graphics* despite the similarity of the issues raised on appeal.

dustry by assuring investors that SPF was utilizing particularly conservative assumptions relative to pre-payment rates and delinquencies such that the general industry downturn should not have adversely affected SPF. In spite of these assurances, the complaint alleges that defendants were aware, over a lengthy period, of the fact that their pre-payment and delinquency assumptions were grossly inaccurate and that these inaccuracies threatened the financial stability of the company. Board meeting minutes and e-mail reveal that defendants were aware of the seriousness of the situation SPF faced. I find that these allegations satisfy the "deliberate recklessness" pleading standard set forth in *Silicon.* If proven, the facts alleged support a finding that the defendants knew that they were driving in front of a speeding freight train and that there was a high likelihood of getting hit.

The remaining allegations (paragraphs 133–181) concern claimed accounting violations under GAAP and GAAS and relate to audit work performed by newly added defendant KPMG relative to 1996 and 1997 financial statements. In *In re Worlds of Wonder Securities Litigation,* 35 F.3d 1407 (9th Cir.1994) (*WOW*), the Ninth Circuit recognized that outside auditors could well be liable under § 10(b) even where insider defendants were not, if plaintiffs could establish that the auditor's conduct constitutes an "extreme departure from reasonable accounting practice," such that "the audit amounted to no audit at all." *Id.* at 1425 (citations omitted). The court further explained that deliberate GAAS violations or the publication of inaccurate accounting figures was insufficient to show scienter, absent evidence of extreme, deficient conduct.

While *Silicon* did not address the liability of an outside auditor, laying *Silicon*'s pleading standard against the *WOW* court's assessment of the role of an outside auditor, I find that plaintiffs have pleaded facts which would tend to show that KPMG's accounting practices were extremely deficient when gauged at the time they were undertaken.

*Conclusion*

I have considered all of the allegations included within plaintiffs' Fourth Amended Consolidated Complaint along with plaintiffs' supplemental material and I have concluded that plaintiffs have stated claims against all of the defendants for violations of §§ 11 and 15 of the 1933 Securities Act. Plaintiffs have withdrawn their request for reconsideration of my earlier dismissal of their claims under § 12 of the 1933 Act. I further find that plaintiffs have met the heightened particularity requirement of the PSLRA relative to their claims under § 10(b) of the 1934 Securities and Exchange Act. This latter holding applies with equal force to plaintiffs' claims of § 20 liability against the individual defendants under the 1934 Act. To the extent that additional pleading is required relative to each individual defendant for purposes of asserting § 20 liability, I find that plaintiffs have satisfied the standard by providing a sufficient factual basis for each individual's role in the alleged fraudulent practices.

Based on the foregoing, plaintiffs' motion for reconsideration of my earlier dismissal of the 1933 Act claims (# 116) is GRANTED; plaintiffs' motion for leave to file a Fourth Amended Consolidated Complaint (# 125) is GRANTED; defendants' motions to dismiss (# 131, 134, 140) are DENIED except as to the § 12 claim under the 1933 Act; plaintiffs' motion to file a supplemental memorandum to add allegations to the complaint (# 155) is GRANTED.

IT IS SO ORDERED.