**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JOHN A. HICKEY,
        *Defendant-Appellant.*

No. 02-10197

D.C. No.
CR-97-00218-MMC

---

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JOHN A. HICKEY,
        *Defendant-Appellant.*

No. 02-10204

D.C. No.
CR-97-00218-MMC

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted
January 13, 2004—San Francisco, California

Filed April 30, 2004
Amended March 8, 2005

Before: J. Clifford Wallace, M. Margaret McKeown, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

**COUNSEL**

David J. Cohen, Cohen & Paik, San Francisco, California, for the defendant-appellant.

Robin Harris, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

**ORDER**

The opinion is amended as follows: (a) the paragraph in section V that begins "Hickey's arguments meet none of the criteria" is deleted; (b) the first word of the next paragraph is deleted so that the sentence reads "The district court did not resolve an 'important issue' "; and (c) the following footnote is inserted at the end of the sentence:

> We need not decide whether Hickey's challenge to the indictments has been "conclusively determined," because, as we explain, that challenge does not meet the remaining requirements of the collateral order doctrine.

With these changes the petition for rehearing and the petition for rehearing en banc are denied. No further petition for rehearing will be entertained.

## OPINION

CALLAHAN, Circuit Judge:

Almost five years after he was first indicted, John A. Hickey filed a number of motions in the district court on the eve of trial. When the motions were denied, Hickey filed two interlocutory appeals, basing appellate jurisdiction on the collateral order doctrine. We determine that none of Hickey's contentions raises a colorable claim under the collateral order doctrine and dismiss his appeals for lack of jurisdiction.

**I**

In September 1994, the Securities and Exchange Commission ("SEC") filed a civil action against Hickey, his partner, Mamie Tang, and their partnerships. The SEC seized and closed down Continental Capital Financial Group ("CCFG"), which was controlled fifty percent each by Hickey and Tang. The SEC contended that from July 1992 through July 1994, CCFG raised $5 million by selling unregistered limited partnerships in Fund I, and raised $15 million by selling unregistered limited partnerships in Fund II. The SEC alleged that Hickey and Tang violated federal security laws by offering for sale unregistered securities and making material misrepresentations in the materials distributed to investors.

CCFG represented to potential investors that it owned certain real property in California's Napa and Sonoma Valleys and that the investments would allow it to prepare the land for residential development, at which time CCFG would sell the land or refinance the properties, and pay off the investments. The receiver appointed in the SEC's action represented that the investors' total losses for Funds I and II were over $17.5 million.[1]

---

[1] A further statement of Hickey's operations is contained in *SEC v. Hickey,* 322 F.3d 1123, *amended,* 335 F.3d 834 (9th Cir. 2003). We dismissed Hickey's challenge to a contempt order for lack of jurisdiction and affirmed the district court's freezing of the assets of Hickey's real estate brokerage firm.

In February 2000, the district judge hearing the SEC action ordered Hickey to disgorge $1,106,090.69, money he had personally diverted from Fund II. When Hickey failed to make any payments, the judge in September 2001, held him in civil contempt and threatened to incarcerate him. Hickey then made three monthly payments, and in December 2001, the judge issued an order purging Hickey of contempt. Hickey has now paid the entire $1.1 million judgment into the district court's registry.

Meanwhile, on July 16, 1997, a grand jury returned a 32-count criminal indictment against Hickey and Tang, including several counts of mail fraud. On January 9, 2001, a separate grand jury returned a superseding indictment solely against Hickey, charging multiple counts of mail fraud arising from the same scheme described in the original indictment.

Just before trial, Hickey filed several motions. When the district judge denied his motions, he filed two notices of appeal. The notices stated that Hickey sought appellate review of the district court's denials of his (1) motion to dismiss for violation of the Double Jeopardy Clause of the Fifth Amendment, (2) motion "to collaterally estop the United States from proving that he personally misappropriated and/or misapplied more than $1.1 million from Continental Capital Fund II," (3) motion to dismiss based on insufficient evidence before the grand juries, (4) motion to stay trial, and (5) request for access to the full transcript of the grand juries.[2]

## II

Under 28 U.S.C. § 1291, a criminal case is generally not subject to appellate review "until conviction and imposition of

---

[2]Because Hickey's opening brief does not address the district court's denial of his motion for grand jury transcripts, we deem the issue waived. *Officers for Justice v. Civil Serv. Comm'n*, 979 F.2d 721, 726 (9th Cir. 1992).

sentence." *Flanagan v. United States,* 465 U.S. 259, 263 (1984). Accordingly, denials of pretrial motions are not usually appealable. *See United States v. Cejas*, 817 F.2d 595, 596 (9th Cir. 1987).

**[1]** These appeals concern a narrow exception to the finality rule: the collateral order doctrine, which was set forth in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). This doctrine allows an immediate appeal from an interlocutory order that "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). Hickey invokes the collateral order doctrine as the basis for all four of the issues he seeks to raise on appeal. As we explain below, none of Hickey's issues comes close to meeting the *Cohen* standard, and accordingly, we dismiss his appeals for lack of jurisdiction.

### III

**[2]** The pre-trial denial of a colorable double jeopardy claim may be immediately appealed.[3] *United States v. Price,* 314 F.3d 417, 420 (9th Cir. 2002); *United States v. Gutierrez-Zamarano*, 23 F.3d 235, 236 (9th Cir. 1994). The Supreme Court explained in *Abney v. United States*, 431 U.S. 651, 659 (1977), that a pretrial order denying a motion to dismiss on double jeopardy grounds was a "final decision" within the meaning of 28 U.S.C. § 1291 pursuant to the "collateral order" exception announced in *Cohen.* Such an order is a final rejection of an accused's double jeopardy claim, the very nature of which is collateral to and separable from the issue

---

[3]A denial of a motion to dismiss on double jeopardy grounds is reviewed de novo. *Price*, 314 F.3d at 420; *United States v. James,* 109 F.3d 597, 599 (9th Cir. 1997). A district court's factual findings, however, including those on which a denial may be based, are reviewed for clear error. *United States v. Ziskin,* 360 F.3d 934, 938 (9th Cir. 2003).

of whether the accused is guilty of the offense charged. Furthermore, as the Double Jeopardy Clause protects an individual not only from being subjected to double punishments, but also from being twice put to trial for the same alleged offense, this right would be significantly undermined if appellate review were postponed until after conviction. *Id.* at 659-60.

**[3]** Both the Supreme Court and this court, however, have held that we have interlocutory appellate jurisdiction to reach the merits only of "colorable" double jeopardy claims. *See Richardson v. United States*, 468 U.S. 317, 322 (1984) ("Moreover, we have indicated that the appealability of a double jeopardy claim depends upon its being at least 'colorable.' "); *United States v. Sarkisian*, 197 F.3d 966, 983 (9th Cir. 1999) ("A claim of double jeopardy must be at least 'colorable' to confer interlocutory jurisdiction on an appellate court."); *United States v. McKinley*, 38 F.3d 428, 429 (9th Cir. 1994) ("[J]urisdiction does not exist in this case because the double jeopardy claim is not ripe and the vindictive prosecution claim cannot be brought up on an interlocutory appeal."). To be colorable, a double jeopardy claim must have "some possible validity." *Price*, 314 F.3d at 420.

**[4]** The Double Jeopardy Clause prohibits the government from "punishing twice, or attempting a second time to punish criminally for the same offense." *United States v. Usery*, 518 U.S. 267, 273 (1996) (internal quotation marks omitted); *see also* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."). Two questions arise out of this provision. First, is the second offense the "same" as the first? Second, is there an attempt to "punish twice?" The former question triggers the *Blockburger* test. *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does

not."). The latter question triggers the *Hudson* test. *Hudson v. United States*, 522 U.S. 93, 99 (1997) (setting forth factors for determining whether a civil penalty should be considered a criminal penalty).

**[5]** Under *Blockburger,* "[d]ouble jeopardy is not implicated so long as each violation requires proof of an element which the other does not." *United States v. Vargas-Castillo,* 329 F.3d 715, 720 (9th Cir. 2003). In this case, Hickey contends that the district judge's order of disgorgement of $1.1 million in the SEC's action, and the judge's willingness to incarcerate Hickey, constitute criminal punishment for the same activity as charged in the indictment and bar the government from proceeding criminally against him. The offense for which Hickey alleges he was first put in jeopardy is civil contempt arising out of a civil action brought by the SEC. The offenses for which Hickey alleges the government now attempts to put him in jeopardy are mail, wire, and securities fraud. The elements of the civil contempt and fraud offenses are completely different. Because Hickey's double jeopardy claim does not allege two separate offenses under *Blockburger*, it is not colorable, and we need not reach the issue of how Hickey's claim fares under *Hudson.*

As Hickey has not, and cannot, make a colorable claim that his constitutional right against double jeopardy has been violated, his appeal from the district court's denial of his motion to dismiss on double jeopardy grounds is dismissed for lack of appellate jurisdiction.

**IV**

Hickey seeks review of the denial of his motion "to collaterally estop the United States from proving that he personally misappropriated and/or misapplied more than $1.1 million from Continental Capital Fund II." Hickey contends that the superseding indictment should be dismissed because it alleges a scheme that requires proof of losses of more than $15 mil-

lion when the government is collaterally estopped from proving losses of more than $1.1 million.

Hickey correctly notes that in *Cejas*, we exercised appellate jurisdiction to review a denial of a claim that a prosecution was barred by collateral estoppel. The court held that it had appellate jurisdiction under the double jeopardy exception to the finality rule, explaining:

> The bar to a second prosecution based on collateral estoppel is a principle "embodied in the Fifth Amendment guarantee against double jeopardy." . . . Thus, an order denying a motion to bar retrial based on collateral estoppel — being a double jeopardy determination — is also appealable under the rationale of *Abney.*

*Cejas,* 817 F.2d at 596 (quoting *Ashe v. Swenson*, 397 U.S. 436, 445 (1970)). Accordingly, Hickey may properly invoke this court's appellate jurisdiction to review his collateral estoppel issue if he has a colorable claim under the double jeopardy exception to the finality rule.

**[6]** Hickey's claim of collateral estoppel is without merit. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443. Hickey has met neither the common ultimate fact prong nor the same party prong of the collateral estoppel test.

**[7]** The disgorgement order in the SEC action did not address the extent of Hickey's alleged criminal activities. It was at most a determination of how much Hickey personally had obtained improperly from Fund II. Thus, the disgorgement order did not purport to determine the losses to investors from Hickey's schemes. Furthermore, the government has

agreed not to seek to relitigate the amount Hickey personally misappropriated from Fund II.

[8] Moreover, the SEC, the adverse party in the first proceeding, and the United States are not the same party. The SEC brought its action pursuant to the Securities Act of 1933 and the Securities Exchange Act of 1934. It was not acting as "the federal sovereign vindicating the criminal law of the United States." *United States v. Heffner*, 85 F.3d 435, 439 (9th Cir. 1996). Furthermore, Hickey has not rebutted the United States' representation that it did not have "a full and fair opportunity to litigate anything at all in the SEC's civil action against Hickey." *See Standefer v. United States*, 447 U.S. 10, 22 (1980) (indicating that "full and fair opportunity to litigate" is a prerequisite of estoppel).

### V

In contrast to his first two claims, which were based on the particular rights inherent in the Double Jeopardy Clause, Hickey's third claim — that the evidence before the grand juries was insufficient — is based on a broader application of the collateral order doctrine.

[9] As noted, this doctrine treats orders by the district court that "finally determine claims of right separate from, and collateral to, rights asserted in the action" as final judgments even though they do not "end the litigation on the merits." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798 (1989) (quoting *Cohen*, 337 U.S. at 546). We have held that an interlocutory order that falls within the small class of decisions excepted from the final-judgment rule by *Cohen*, "(1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment." *Pace,* 201 F.3d at 1119 (internal citations and quotation marks omitted).

Hickey does not challenge the facial sufficiency of the indictments. Instead, he contends that the government failed to present any evidence of mailing to the first grand jury in 1997, and that the government only presented indirect evidence of mailing to the second grand jury in 2001. He claims that such evidence is critical because each count of the superseding indictment charges a particular mailing. Hickey argues "[i]nasmuch as the government's failure to present evidence of mailing caused the indictment not to be an indictment, and prevented the grand jury from exercising its function as a grand jury, the indictment and superseding indictments must be dismissed."

[10] The district court did not resolve an "important issue."[4] Hickey argues that if the grand jury was not provided the type of evidence of mailing that he contends is necessary, the indictment must be dismissed. This argument is not well taken, at least as a basis for seeking a pre-trial dismissal of an indictment.

[11] In *Midland,* the Supreme Court held that "[o]nly a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." 489 U.S. at 802. Consistent with this approach, district courts generally may not look behind an indictment before trial. In *United States v. DeLuca*, 692 F.2d 1277, 1280 (9th Cir. 1982), we held that we "do not dismiss an indictment valid on its face absent a showing that the government flagrantly manipulated, overreached, or deceived the jury, . . . "[n]or does incomplete evidence before the grand jury detract from the resulting indictment." Most recently, in *United States v. Bird*, 359 F.3d 1185, 1187 (9th Cir. 2004), we held that we do not have interlocutory appellate jurisdiction to review the district

---

[4]We need not decide whether Hickey's challenge to the indictments has been "conclusively determined," because, as we explain, that challenge does not meet the remaining requirements of the collateral order doctrine.

court's rejection of defendants' challenge to the sufficiency of an indictment. Our position is consistent with Justice Black's explanation in *Costello v. United States,* 350 U.S. 359, 408-09 (1956):

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

**[12]** Hickey's allegation of insufficient evidence before the grand jury, even if meritorious, would not rise to the level of a fundamental defect. The Supreme Court and this court have repeatedly rejected appeals from similar pre-trial orders.[5]

---

[5]*See Midland,* 489 U.S. at 801 (holding that motion to dismiss grand jury indictment for alleged violation of rule prohibiting public disclosure of matters occurring before grand jury was not appealable before trial); *United States v. Moreno-Green,* 881 F.2d 680, 684 (9th Cir. 1989) (holding that order denying defendants' motion to dismiss indictment on basis of alleged prosecutorial misconduct before grand jury was not appealable before trial); *United States v. Shah,* 878 F.2d 272, 275 (9th Cir. 1989) (concluding that orders refusing to dismiss indictment for alleged grand jury misconduct and refusing to compel discovery of grand jury proceedings were not appealable before trial); *United States v. Schiff,* 874 F.2d 705, 706 (9th Cir. 1989) (holding that motions to dismiss indictment and for disclosure of grand jury transcripts were not appealable); *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 270 (1982) (concluding that order denying motion to dismiss based on prosecutorial vindictiveness was not appealable before trial); *United States v. MacDonald,* 435 U.S. 850, 862 (1978) (holding that denial of motion to dismiss on speedy trial grounds was not appealable before trial).

In addition, Hickey's argument cannot be said to be "completely separate from the merits of the action." The legal consequences of the lack of some item of evidence before a grand jury would appear to depend, at least in part, on the particular charges in the indictment, the other evidence before the grand jury, and the relationship between that other evidence and the allegedly missing evidence.[6]

[13] Finally, Hickey's claim is not "effectively unreviewable on appeal from a final judgment." In *Midland,* the Supreme Court explained that although the denial of any pretrial motion might be said to be unreviewable if it requires that the defendant go to trial, the collateral order doctrine only applies where there is an explicit statutory or constitutional guarantee prohibiting trial.[7] Hickey is in the same position as the defendant in *Pace.* There, we dismissed the defendant's interlocutory appeal based on the collateral order doctrine because we determined that the McCarran-Ferguson Act did not protect the defendant from prosecution, noting that whether the Act protected him from federal conviction could be reviewed on appeal from a final judgment. *Pace,* 201 F.3d at 1120.

[14] In sum, to come under the collateral order doctrine, an interlocutory appeal must challenge an order that conclusively determines an important issue completely separate from the merits of the action that cannot be effectively reviewed on appeal from a final judgment. As Hickey's challenge to the

---

[6]We note that here the district court reviewed the grand jury transcripts *in camera*, gave Hickey access to some portions of the transcript and determined that the indictments were based on probable cause.

[7]A right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee that trial will not occur — as in the Double Jeopardy Clause ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"), . . . or the Speech or Debate Clause ("[F]or any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place"). 489 U.S. at 801 (internal citations omitted).

sufficiency of the evidence before the grand jury does not raise a colorable claim under these criteria, his appeal from the district court's denial of his motion to dismiss the superseding indictment for improprieties before the grand jury is dismissed for lack of jurisdiction.

## VI

Hickey also seeks appellate review under the collateral order doctrine of the district court's denial of his motion to stay the trial. The district court abused its discretion, Hickey argues, by refusing to stay his trial notwithstanding claims that he lacked sufficient funds to retain experts indispensable to his defense. We have jurisdiction to review the district court's order denying Hickey's motion for a stay if the order conclusively resolves an important issue completely separate from the merits of the action and is effectively unreviewable on appeal. *Marchetti v. Bitterolf*, 968 F.2d 963 (9th Cir. 1992).

[15] Whether or not Hickey's appeal is moot,[8] we lack jurisdiction to review the district court's order denying his motion for stay. The district court did not conclusively determine whether Hickey possessed sufficient funds to present his defense. Although Hickey's payment of the $1.1 million disgorgement order might raise doubts as to his alleged poverty, Hickey had options if he truly believed that he could not adequately prepare for trial. Hickey could have sought funding under the Criminal Justice Act[9] or he could have sought a limited continuance to address a particularized need. Furthermore, Hickey may raise his arguments on appeal from a final judgment, should he be convicted.

---

[8]We note that: (1) Hickey's appeal from the contempt order in the SEC action has been dismissed, *Hickey*, 322 F.3d at 1123; (2) Hickey has paid the entire disgorgement order; and (3) the district court stayed proceedings pending these appeals.

[9]Hickey was aware of this option as his eligibility for appointed counsel under the Criminal Justice Act had been contested earlier in the litigation.

## VII

**[16]** The collateral order doctrine is a time-honored and necessary exception to the finality rule. However, interlocutory appeals under the collateral order doctrine in criminal cases are properly limited to instances, such as colorable double jeopardy claims, where there are statutory or constitutional guarantees against the defendants standing trial. As none of Hickey's four contentions raises a colorable claim under the collateral order doctrine, these appeals are **DISMISSED** for lack of jurisdiction.