**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

BENJAMIN AUSTIN; FELIPE CISNEROS;
LORENA CISNEROS; LUIS CISNEROS;
PAUL EPPINGER; RAYMOND LLAMAS;
ANGEL RIVERA; RICHARD TRUJILLO,
              *Defendants-Appellants.*

No. 04-10576

D.C. No.
CR-03-00730-ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
April 12, 2005—San Francisco, California

Filed August 2, 2005

Before: Procter Hug, Jr., Warren J. Ferguson, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Ferguson

**COUNSEL**

Mark Fine (argued), Albuquerque, New Mexico; Billy R. Blackburn (briefed), Albuquerque, New Mexico, for the defendants-appellants.

Steven C. Yarbrough, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

## OPINION

FERGUSON, Circuit Judge:

Defendants-Appellants Benjamin Austin, Felipe Cisneros, Lorena Cisneros, Luis Cisneros, Paul Eppinger, Raymond Llamas, Angel Rivera, and Richard Trujillo (collectively, "Defendants") appeal the District Court's interlocutory order permitting disclosure of communications that occurred outside the presence of counsel between at least one of them and co-defendant Armando Alvarado ("Alvarado"), who withdrew from a joint defense agreement ("JDA") to cooperate with the Government. We hold that the District Court's order is not immediately appealable under the collateral order doctrine, the *Perlman* rule, or as a writ of mandamus and, therefore, dismiss Defendants' appeal for lack of jurisdiction.

## I. BACKGROUND

The United States charged co-defendants in this case with, among other crimes, conspiracy to commit murder, murder, and offenses under the Racketeer Influenced and Corrupt Organizations Act. Shortly after being indicted in the District of New Mexico in November 2002, co-defendants entered into a written JDA. The district court approved the JDA and allowed co-defendants to conduct joint defense meetings. The Government later dismissed the New Mexico indictment when it indicted co-defendants on similar charges in the District of Arizona in July 2003. Upon transferring to Arizona, co-defendants signed an identical JDA, from which Alvarado eventually withdrew to cooperate with the Government.

On May 26, 2004, the Government moved to strike or clarify certain JDA provisions that could keep Alvarado from discussing statements that co-defendants made in jail after signing the New Mexico JDA. Alvarado had been housed in the same jail pod as Defendants Felipe Cisneros, Luis Cisneros, Paul Eppinger, Raymond Llamas, and Angel Rivera

while detained in New Mexico from January to November 2003. Alvarado's attorney had expressed concern to the Government that the JDA could prevent Alvarado from disclosing any of the co-defendants' statements, regardless of whether they occurred outside of an attorney's presence or not in preparation for a joint defense.

The District Court ruled on August 6, 2004 "that statements made during discussions between inmates in their cells with no lawyers present are not covered as confidential communications under the joint defense privilege." As a result, the Court decided not to examine, strike, or clarify any of the JDA's provisions in response to the Government's motion.

Upon Defendants' motion for reconsideration, the District Court reviewed Alvarado's ex parte submissions in camera to determine if the joint defense privilege protected their disclosure. In its October 5, 2004 order, the Court explained that courts have generally held that the joint defense privilege does not cover conversations among defendants made outside counsel's presence. The Court also found that, even assuming that the joint defense privilege could protect these inmate-to-inmate conversations, the joint defense privilege did not protect the discussions in question because they were not made at an attorney's behest or for the purpose of seeking legal advice or communicating confidential work product.

Defendants ask that we reverse the District Court's order on appeal. In particular, they contend that the District Court erred in accepting Alvarado's ex parte submissions as true without providing Defendants with access to the communications at issue and, thereby, depriving them of a fair opportunity to assert specific privilege claims as required by *United States v. Martin*, 278 F.3d 988 (9th Cir. 2002). In *Martin*, we held that "[a] party claiming the [attorney-client] privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *Id.* at 1000 (citing *United States v.*

*Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977)). Thus, on appeal, Defendants seek to obtain access to the communications at issue. Only with this information in hand, Defendants argue, can they identify with specificity those conversations that the joint defense privilege potentially protects. They concede the possibility, however, that none of the communications in dispute might be protected.

## II.   JURISDICTION

Generally, we have jurisdiction to review only "appeals from all final decisions of the district courts . . ." 28 U.S.C. § 1291. Since this case involves a pretrial order, the order is not a final decision appealable under 28 U.S.C. § 1291. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 521-22 (1988) (stating that a decision is not final for appeal purposes "until there has been a decision by the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment' ") (quotation omitted). Defendants contend, nevertheless, that we have jurisdiction to review the order under three alternative bases: 1) the collateral order doctrine, 2) the *Perlman* rule, or 3) as a writ of mandamus. None of these grounds provide this Court with jurisdiction.

### A.   Collateral Order Doctrine

[1] A small class of orders is final for purposes of 28 U.S.C. § 1291 under the collateral order doctrine set forth in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The collateral order doctrine is actually considered "a narrow exception to[,]" *United States v. Bird*, 359 F.3d 1185, 1188 (9th Cir. 2004), or a "practical construction of[,]" *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (citing *Cohen*, 337 U.S. at 546), the final judgment rule that treats orders by the district court that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate

consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546.

In the criminal context, specifically, the Supreme Court has interpreted the collateral order doctrine "with the utmost strictness" as a result of "the compelling interest in prompt trials[.]" *Flanagan v. United States,* 465 U.S. 259, 265 (1984). "Piecemeal appeals encourage delay, which 'is fatal to the vindication of the criminal law.' " *United States v. Lewis*, 368 F.3d 1102, 1104 (9th Cir. 2004), *cert. denied*, 125 S.Ct. 901 (2005) (quoting *United States v. McDonald*, 435 U.S. 850, 853-54 (1978)). In fact, "delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes." *McDonald*, 435 U.S. at 862 (citing *Dickey v. Florida*, 398 U.S. 30, 42 (1970) (Brennan, J., concurring)). Thus, we interpret the collateral order doctrine strictly in this case.

**[2]** For the District Court's order to fall under the collateral order doctrine, it must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468-69 (1978) (footnote and citations omitted). Should the order fail to meet any one of these requirements, it is not appealable under the collateral order doctrine. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276 (1988).

### 1.

**[3]** We first consider if the District Court's order is "tentative, informal or incomplete" because "[s]o long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." *Cohen*, 337 U.S. at 546. The District Court conclusively decided "that statements made during dis-

cussions between inmates in their cells with no lawyers present are not covered as confidential communications under the joint defense privilege." In so doing, it acknowledged that the issue had been fully developed through extensive briefing and oral argument, and that no further briefing, argument, or ex parte hearings with Alvarado or a privilege log were necessary. The first requirement is satisfied.

**2.**

To meet the second requirement, Defendants must show that appellate review will "resolve an important issue completely separate from the merits of the action[.]" *Coopers & Lybrand*, 437 U.S. at 468. Resolution of the issue, therefore, must "not simply [be] a 'step toward final disposition of the merits of the case (which would) be merged in final judgment[.]' " *Abney v. United States*, 431 U.S. 651, 658 (1977) (quoting *Cohen*, 337 U.S. at 546). For instance, we have held as unreviewable under the collateral order doctrine a district court's denial of a defendant's motion to dismiss an indictment on the basis of a "fair warning" defense because the "fair warning claim involve[d] questions inextricably intertwined with the question of [defendant's] alleged guilt." *Lewis*, 368 F.3d at 1106. The evidence that defendant sought to introduce in support of his fair warning defense, in fact, "[went] to the heart of his criminal liability." *Id.*

[4] Here, the Government concedes that the second requirement's separability prong is satisfied. Defendants' privilege claim is independent of their criminal liability; they make no challenge whatsoever to the merits of the charges against them. Moreover, the effect of the District Court's order is independent because it does not require a showing of prejudice to the defense as a necessary element that can be adequately reviewed only after the conclusion of the co-defendants' trials. *See Flanagan*, 465 U.S. at 268-69 (explaining how an order disqualifying counsel, like a denial of a motion to dismiss on speedy trial grounds, is final but not

independent of the issues to be tried because the effect of either decision cannot be appropriately considered until the trial is complete).

[5] As a separate inquiry, we consider whether Defendants' privilege claim is "important in *Cohen*'s sense, as being weightier than the societal interests advanced by the ordinary operation of final judgment principles." *Digital Equip. Corp.*, 511 U.S. at 879 (internal quotations omitted). This Circuit has suggested that breaches in confidentiality arising from an attorney-client relationship present an important issue under *Cohen*. *See Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003), *cert. denied*, 540 U.S. 1013 (2003). The D.C. Circuit, relying in part on *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), where the Supreme Court explained that the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice[,]" has explicitly found that the attorney-client privilege is an "important issue" under *Cohen*. *See In re England*, 375 F.3d 1169, 1175-76 (D.C. Cir. 2004), *cert. denied*, 125 S.Ct. 1343 (2005); *see also In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1209-10 (D.C. Cir. 2004) (comparing the federal psychotherapist privilege to the attorney-client privilege and identifying the former as "important" under *Cohen*).

[6] We find that the joint defense privilege also raises an "important issue" under *Cohen* because "[it] is an extension of the attorney-client privilege." *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000); *see Waller v. Financial Corp. of America*, 828 F.2d 579, 583 n. 7 (9th Cir. 1987). The joint defense privilege, in fact, protects not only the confidentiality of communications passing from a party to his or her attorney but also "from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)

(citation omitted); *see Henke*, 222 F.3d at 637 ("A joint defense agreement establishes an implied attorney-client relationship with the co-defendant . . ."). As such, the issue before us is an important issue separate from the merits of the action.

**3.**

**[7]** The most contentious issue involves the third requirement. The District Court's order is unreviewable if it "involve[s] an important right which would be 'lost, probably irreparably,' if review had to await final judgment[.]" *Abney*, 431 U.S. at 658 (quoting *Cohen*, 337 U.S. at 546). The "right" at stake in this appeal is ambiguous at best. Defendants claim that they have a right not to have Alvarado divulge privileged communications that occurred between them outside counsel's presence. Yet they cannot point to any specific privileged communications for this Court to review. Defendants contend, instead, that the District Court erred by not providing them with access to the communications at issue. Effectively, the right at stake is the right to access the communications in dispute for the purpose of determining if the joint defense privilege protects their disclosure. We look to Supreme Court precedent, as well as this Circuit's precedent, to determine if Defendants' interest in obtaining this information constitutes an "important right" warranting immediate review of the District Court's order.

In *Flanagan*, the Supreme Court explained that "[it] has found only three types of pretrial orders in criminal prosecutions to meet the requirements [of the collateral order exception]. Each type involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" 465 U.S. at 265-66 (internal citation and quotation omitted). These "important rights" include the right to pretrial bail, *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (explaining that an order denying a motion to reduce fixed bail as excessive under the Eighth Amendment becomes moot if review awaits final judgment); the right not to be placed in

double jeopardy, *Abney*, 431 U.S. at 660 (stating that "the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence"); and the right to avoid exposure to questioning as a Member of Congress on the ground that it violates the Speech or Debate Clause of the Constitution, *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979) (concluding that "if a Member 'is to avoid *exposure* to [being questioned for acts done in either House] and thereby enjoy the full protection of the Clause, his . . . challenge to the indictment must be reviewable before . . . exposure [to trial] occurs' ") (alterations in original) (quoting and analogizing to *Abney*, 431 U.S. at 662).

In *Flanagan*, specifically, the Court found that the order at issue, an order disqualifying a law firm from its multiple representation of four petitioners, was not analogous to any of the three types of interlocutory orders that the Court had previously found immediately appealable because the order did not entail "a right not to be tried." 465 U.S. at 267. Different from an order involving a double jeopardy or speech and debate clause right, "[a]n appellate court's reversal of a disqualification order would not result in dismissal of the prosecution. The prosecution would continue, though only after long delay." *Id.* at 269.

In this Circuit, we have interpreted Supreme Court precedent as limiting review of interlocutory appeals in criminal cases "to instances . . . where there are statutory or constitutional guarantees against the defendants standing trial." *United States v. Hickey*, 367 F.3d 888, 896 (9th Cir. 2004), *amended by* 400 F.3d 658 (9th Cir. 2005). In *Hickey*, for example, we held that the collateral order doctrine did not apply to defendant's interlocutory appeal because defendant had failed to make a colorable claim that his constitutional right against double jeopardy had been violated. *Id.* at 892. In *United States v. Brandon P.*, we further held that an immedi-

ate appeal was unnecessary to vindicate a juvenile's speedy trial right because the effect of the delay, not the juvenile's treatment, could not be judged until after trial. 387 F.3d 969, 974 (9th Cir. 2004), *cert. denied*, 125 S.Ct. 2936 (2005). We concluded, however, that a commitment order under 18 U.S.C. § 4241(d), which involuntarily commits a criminal defendant to the custody of the Attorney General when the district court finds him or her incompetent to stand trial on federal criminal charges, is immediately appealable because "[it] deprives [a defendant] of his freedom," and "nothing could recover for the defendant the time lost during his confinement; probably no one could be held liable to him in damages for the loss of his liberty." *United States v. Friedman*, 366 F.3d 975, 979-80 (9th Cir. 2004) (internal citation and quotation omitted).

Here, Defendants rely almost exclusively on our decision in *Bittaker v. Woodford* to contend that their alleged privilege claim is effectively unreviewable on appeal from final judgment. 331 F.3d 715 (9th Cir. 2003), *cert. denied*, 540 U.S. 1013 (2003). There, a habeas petitioner raised several ineffective-assistance-of-counsel claims that required a waiver of the attorney-client privilege. The district court entered a protective order, however, precluding use of those privileged materials for any purpose other than litigating the habeas petition and barring the State from turning them over to any other person or office. We ruled that we had jurisdiction to review the State's interlocutory appeal of the protective order because review after final judgment would come too late. If we invalidated the protective order after final judgment, we would not be able to correct Bittaker's erroneous disclosure of privileged materials because the cat would have already been let out of the bag. Bittaker, in fact, "w[ould] suffer serious prejudice during any retrial." *Id.* at 718.

[8] This case is readily distinguishable from *Bittaker*. *Bittaker* involved a non-recurring issue about the validity of the district court's protective order. There was no question there

that the materials at issue were privileged; the question was whether the disclosure of those materials to prove ineffective assistance of counsel could put petitioner at risk of having the State use those materials to re-prosecute him. This case, however, involves a discovery/privilege-type ruling that is recurring and could cause disruption and delay in the co-defendants' trials if immediately appealable. Unlike in *Bittaker*, Defendants have not raised any specific privilege claims as required by *Martin*, 278 F.3d at 1000. Indeed, they concede that the communications at issue might not even be privileged. The real possibility that existed in *Bittaker* that privileged information would be irreparably leaked to the State simply does not exist in this case. Thus, we cannot reverse and instruct the District Court to disclose the communications in question for the sole purpose of allowing Defendants to pick and choose which communications raise suitable privilege claims.

[9] Moreover, we cannot defy precedent to conclude that Defendants' nonexistent privilege claims involve an important right the legal and practical value of which would be lost if review had to await final judgment. Defendants' asserted right to first obtain information from Alvarado and then raise specific privilege claims certainly does not rise to the level of an important right synonymous with a "right not to be tried." *Flanagan*, 465 U.S. at 267. In fact, like in *Flanagan*, Defendants' "claim 'would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof.' " *Id.* (quoting *McDonald*, 435 U.S. at 859) (citation omitted). This last requirement is not satisfied, thereby leaving this Court without jurisdiction to review the District Court's order under the collateral order doctrine.

## B.  *Perlman* Rule

[10] In *Perlman v. United States*, the Supreme Court created an exception to the final judgment rule by treating a discovery order (a subpoena) directed at a disinterested third-

party custodian of privileged documents as immediately appealable. 247 U.S. 7 (1918). The order was immediately appealable because the third party, presumably lacking a sufficient stake in the proceeding, would most likely produce the documents rather than submit to a contempt citation. We disagree with Defendants' contention that the *Perlman* rule applies in this case.

[11] The *Perlman* rule, indeed, does not provide an alternative jurisdictional basis to review the District Court's order for several reasons. First, there is no discovery order at issue in this case; should Alvarado refuse to cooperate with the Government, he faces no risk of being cited for contempt as in *Perlman*. Second, Alvarado is not a disinterested third-party custodian of privileged information; rather, he is an interested party who wants to cooperate with the Government to avoid a potential life sentence. Last, Defendants are not, like Perlman, "powerless to avert the mischief of the order" (*id.* at 13); if Defendants were parties to these communications, they should be able to assert specific privilege claims.

## C. Writ of Mandamus

[12] As a last recourse, Defendants contend that we should review the District Court's order as a mandamus petition. *See United States v. Amlani*, 169 F.3d 1189, 1193 (9th Cir. 1999) (recognizing that privilege claims justify mandamus review in certain situations). "In considering an appeal as a mandamus petition, we review the district court's actions for clear error. 'To issue the writ, the court must be firmly convinced that the district court has erred, and that the petitioner's right to the writ is clear and indisputable.' " *Special Invs., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 993 (9th Cir. 2004) (internal citation and quotation omitted).

In particular, this Court is guided by five factors in deciding whether to grant a writ of mandamus:

(1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal . . . (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman v. United States Dist. Ct.*, 557 F.2d 650, 654-55 (9th Cir. 1977) (internal citations omitted). "The applications [sic] of these factors is by no means precise. There are frequently questions of degree, and conflicting indicators must often be balanced." *Amlani*, 169 F.3d at 1194 (citations omitted).

**[13]** Defendants have failed to even attempt to demonstrate that they meet these requirements. Instead, they merely assert that we need not find that a petition satisfies all five factors at once. The *Bauman* factors do not weigh in favor of granting the writ in this case. The District Court's order can be reviewed on direct appeal after final judgment. Should Defendants raise any specific privilege claims at trial, the District Court has the power to judge the validity of those claims. There is further no evidence that the order is an oft-repeated error or that it raises new and important problems or issues of first impression. More important, the District Court's decision is not clearly erroneous as a matter of law and issuing a writ of mandamus, therefore, is inappropriate.

## III.   CONCLUSION

**[14]** For the foregoing reasons, we dismiss for lack of jurisdiction Defendants' appeal of the District Court's order. In so doing, we do not decide whether the joint defense privilege ever protects inmate-to-inmate conversations in the absence of counsel.

**DISMISSED.**