**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ROBERT LEE GRIFFIN,
            *Defendant-Appellant.*

No. 05-50299

D.C. No.
CR-02-00938-GHK

OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted
September 15, 2005—Pasadena, California

Filed March 16, 2006

Before: Susan P. Graber, M. Margaret McKeown, and
William A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Joseph Francis Walsh, Los Angeles, California, Michael M. Crain, Santa Monica, California, for the appellant.

Stephen G. Wolfe, Gregory W. Jessner, and Joey Blanche, Office of the U.S. Attorney, Los Angeles, California, for the appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

Robert Lee Griffin appeals the district court's order requiring a special master to deliver to the government redacted letters written by Griffin to Pamela Griffin, who is both his wife and his attorney, while Griffin was incarcerated in California state prison. The letters were seized during a search of Pamela Griffin's residence pursuant to a valid search warrant. A special master redacted those portions of the letters protected by the attorney-client privilege and the work-product doctrine. The district court ordered that the redacted letters be turned over to the prosecution.

Griffin moved in the district court to prevent the special master from turning over the redacted letters, contending that they are protected marital communications. After the district court denied the motion, Griffin brought an interlocutory appeal in this court. He contends that we have jurisdiction to review the district court's order on several bases, including the collateral order doctrine and the so-called *Perlman* rule. We hold that we have jurisdiction, and we affirm.

## I.  Background

Robert Lee Griffin has been indicted in federal district court on one count of conspiracy to conduct and participate in the affairs of the Aryan Brotherhood prison gang's racketeering enterprise, in violation of 18 U.S.C. § 1962, and two counts of participating in the violent crime of murder in aid of the racketeering enterprise, in violation of 18 U.S.C. § 1959(a)(1). Among other things, the indictment alleges that Griffin is one of the leaders of the prison gang and that he has ordered or approved the murders of seven, and the attempted murders of two more, named individuals.

Six boxes of documents were seized by law enforcement officials during a valid search of the residence of Griffin's

wife/attorney. The documents include numerous letters written by Griffin while he was incarcerated in California state prison. These letters were sent in envelopes marked "Confidential" and were addressed to Pamela Griffin as an "Attorney at Law." The magistrate judge appointed a special master to review the letters. The special master redacted all letters and portions of letters protected by the attorney-client privilege and the work-product doctrine. The special master then prepared to turn over to the government those letters and portions of letters not covered by either the attorney-client privilege or the work-product doctrine.

Griffin moved to prevent these redacted materials from being turned over to the government. He did not object to the special master's conclusion that they were not protected by the attorney-client privilege or the work-product doctrine. Rather, he contended that they were protected by the marital communications privilege. The special master recommended that the motion be denied. She concluded that Griffin had violated prison regulations by including non-legal, personal communications in letters designated as confidential attorney-client correspondence. The district court denied Griffin's motion, but on the different ground that the marital communications privilege "generally" extends "only to the use of marital communications as evidence in judicial or grand jury proceedings." Griffin appealed the district court's order denying his motion and directing that the redacted letters be turned over to the office of the United States Attorney. The order has been stayed, and Griffin has remained incarcerated on an unrelated state court conviction, during the pendency of this appeal.

## II. Discussion

### A. Jurisdiction

This court generally has jurisdiction to review only "appeals from all final decisions of the district courts." 28 U.S.C.

§ 1291. The Supreme Court has cautioned that "the delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." *DiBella v. United States*, 369 U.S. 121, 126 (1962). The district court's pretrial order is not a final decision under § 1291 because it does not "end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (internal quotation marks omitted). However, we hold that the order is immediately appealable under either the collateral order doctrine or the *Perlman* rule.

### 1.   Collateral Order Doctrine

**[1]** In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546-47 (1949), the Supreme Court held that a "small class" of pretrial decisions are appealable collateral orders. Under *Cohen*, an interlocutory decision is appealable as a "collateral order" when it "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Sell v. United States*, 539 U.S. 166, 176 (2003) (internal quotation marks omitted). Courts interpret the collateral order doctrine strictly in criminal cases because of "the compelling interest in prompt trials[.]" *United States v. Austin*, 416 F.3d 1016, 1020 (9th Cir. 2005) (quoting *Flanagan v. United States*, 465 U.S. 259, 265 (1984)) (alteration in original). We conclude that Griffin's appeal satisfies the collateral order doctrine.

**[2]** First, the district court's order "conclusively determine[s] the disputed question" whether the government is entitled to read the communications between Griffin and his wife for which the privilege had been claimed. Further, the issue of privilege has been "fully developed" in two rounds of briefing before the special master and the district court. *Austin*, 416 F.3d. at 1020. Although the district court's order leaves open the possibility of Griffin's raising an evidentiary

objection in future judicial proceedings, the disputed question before us is whether the government may read the letters. It is not whether it may use them as evidence in a judicial proceeding. Griffin has therefore satisfied the first *Cohen* requirement.

**[3]** Second, appellate review would resolve an important issue "completely separate from the merits of the action." We have held that claims of attorney-client and joint defense privilege qualify as "important" issues under *Cohen. Id.* at 1021. The marital communications privilege is designed to "protect[ ] . . . marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." *Wolfle v. United States*, 291 U.S. 7, 14 (1934). Griffin's privilege claim does not involve "considerations enmeshed in the merits of the dispute" and would not "affect . . . or be affected by" the decision on the merits in his criminal trial. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 800 (1989) (internal quotation marks and emphasis omitted).

Griffin's "privilege claim is independent of . . . criminal liability" because he does not challenge the merits of the charges against him in this appeal. *Austin*, 416 F.3d at 1021. In addition, Griffin's claim that the marital communications privilege precludes the disclosure of his letters "does not require a showing of prejudice to the defense as a necessary element that can be adequately reviewed only after the conclusion" of his criminal trial. *Id.* (holding that no showing of prejudice is required in review of district court order finding joint defense privilege inapplicable to certain conversations). Griffin thus has satisfied *Cohen*'s second requirement.

**[4]** Third, if we decline to hear Griffin's appeal at this time, and if he is correct in his assertion of privilege, by the time of trial he will have suffered "the very harm that he seeks to avoid," *Sell*, 539 U.S. at 176-77, namely erroneous disclosure

of privileged material. The Supreme Court has stated that "reversal of the conviction and . . . the provision of a new trial free of prejudicial error normally are adequate means of vindicating the constitutional rights of the accused." *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 268 (1982) (per curiam). Collateral orders are therefore limited to those situations where the right asserted is "one that must be upheld prior to trial if it is to be enjoyed at all," *id.* at 270, or "when the practical effect of the order will be irreparable by any subsequent appeal." *DiBella*, 369 U.S. at 126.

**[5]** We have previously invoked the collateral order doctrine to review pretrial orders that conclusively resolved important issues involving claims of privilege in habeas corpus cases. In *Bittaker v. Woodford*, 331 F.3d 715, 717 (9th Cir. 2003) (en banc), the district court had entered an interlocutory protective order holding that a habeas petitioner who had brought an ineffective assistance of counsel claim had not thereby waived his attorney-client privilege in the event his petition was successful and he was later brought to trial in state court on the same criminal charges. We held that we had jurisdiction to review that order. *Id.* at 717-18; s*ee also Osband v. Woodford*, 290 F.3d 1036, 1039-41 (9th Cir. 2002); *Wharton v. Calderon*, 127 F.3d 1201, 1203-04 (9th Cir. 1997). In this case, as in *Bittaker*, the defendant has raised "specific privilege claims," and there exists a "real possibility . . . that privileged information would be irreparably leaked" to the government if it turns out that the district court erred. *Austin*, 416 F.3d at 1023 (describing *Bittaker*). As in *Bittaker*, Griffin has shown a "real possibility" that he will be irreparably harmed by the disclosure of these letters pursuant to the district court's order. Griffin has therefore satisfied the third and final *Cohen* requirement.

## 2. The *Perlman* Rule

**[6]** The Supreme Court's decision in *Perlman v. United States*, 247 U.S. 7 (1918), provides an alternative jurisdic-

tional basis for reviewing the district court's interlocutory order. In *Perlman*, the Supreme Court held that it had jurisdiction to review a district court order permitting the United States Attorney to obtain Perlman's personal documents, which had been deposited with the clerk of the court. *Id.* at 13. The Court rejected the government's contention that the order was not a final decision for purposes of appeal. It held that Perlman, who "was powerless to avert the mischief of the order," should not be required to "accept its incidence and seek a remedy at some other time and in some other way." *Id.* We have interpreted *Perlman* to mean that a discovery order directed at a "disinterested third-party custodian of privileged documents" is immediately appealable because "the third party, presumably lacking a sufficient stake in the proceeding, would most likely produce the documents rather than submit to a contempt citation." *Austin*, 416 F.3d at 1024; *see also United States v. Amlani*, 169 F.3d 1189, 1192 (9th Cir. 1999) (same); *United States v. Doe (In re Grand Jury Proceedings Grand Jury No 97-11-8)*, 162 F.3d 554, 555 n.2 (9th Cir. 1998) (same).

**[7]** The district court order in this case is directed at the special master, a disinterested third-party custodian of allegedly privileged documents. The special master, who has no personal stake in the proceedings, cannot be expected to flout the district court's order and risk a contempt citation to facilitate an immediate appeal for Griffin's benefit. Therefore, in the alternative, we hold that we may review the district court's interlocutory order under the *Perlman* rule.

## B. Standard of Review

Griffin appeals a legal determination of the district court. We review de novo the district court's legal conclusions. *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004).

## C.   Marital Communications Privilege

[8] Federal Rule of Evidence 501 provides that, except as otherwise required by the Constitution, federal statute, or Supreme Court rule, "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. Partly based on Rule 501, federal courts recognize a marital communications privilege that exists to "protect[ ] the integrity of marriages and ensur[e] that spouses freely communicate with one another." *United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1992). The privilege covers (1) "only . . . words or acts intended as communication to the other spouse," (2) "only those communications made during a valid marriage," and (3) "only . . . those marital communications which are confidential." *United States v. Marashi*, 913 F.2d 724, 729-30 (9th Cir. 1990). At least one federal court has recognized a marital communications privilege that extends beyond the evidentiary compass of Rule 501. *See SEC v. Lavin*, 111 F.3d 921 (D.C. Cir. 1997).

There are two marital privileges recognized by the federal common law. The first, usually called the "adverse spousal testimony" privilege, allows a spouse to refuse to testify adversely to his or her spouse. *Trammel v. United States*, 445 U.S. 40, 53 (1980); *Lavin*, 111 F.3d at 925. The second, usually called the "marital communications" privilege, protects from disclosure private communications between spouses. *Blau v. United States*, 340 U.S. 332, 333 (1951); *Wolfle*, 291 U.S. at 13; *Lavin*, 111 F.3d at 925. It is the second that is at issue in this case.

Griffin contends that the marital communications privilege is not merely a privilege protecting against the introduction of evidence at trial or before the grand jury. He contends that it is a broader privilege, protecting against disclosure of recordings or documents containing confidential marital communi-

cations to an adverse party during an investigation, whether or not those recordings or documents are eventually introduced into evidence. The primary decision supporting Griffin's argument is *SEC v. Lavin*, in which the D.C. Circuit addressed an attempt by a married couple to quash a Securities and Exchange Commission's ("SEC") subpoena requiring disclosure of tape recordings of conversations between them. 111 F.3d at 923. The SEC issued its subpoena as part of an ongoing investigation of fraudulent sales practices. *Id.* The conversations between an employee of a securities firm and his wife had been recorded by the employer in the ordinary course of business. *Id.* at 923-24. The D.C. Circuit held that if the conversations had been confidential they were protected by the marital communications privilege from compelled disclosure to the SEC during its investigation. *Id.* at 925, 933-34; *see also Kasza v. Browner*, 133 F.3d 1159, 1176, 1179-80 (9th Cir. 1998) (Tashima, J., concurring) ("These privileges [including the marital communication privilege] exist not because we fear the impact that certain kinds of information might have on a trial. Rather, we are motivated by a more general social policy goal of keeping certain kinds of information secret. Secret from the court. Secret from the jury. Secret from the world."); *cf. Hugle v. United States (In re Grand Jury Investigation of Hugle)*, 754 F.2d 863, 866 (9th Cir. 1985) ("The protective order sought by [Hugle] extended beyond compelled grand jury testimony and included the request that the Government and its investigators be enjoined from interrogating the wife. The privilege relates only to testimony in judicial or grand jury proceedings, and our opinion is limited accordingly.").

We will assume, without deciding, for purposes of our opinion that *Lavin* correctly describes the scope of the marital communications privilege. That is, we will assume that a recording or document containing a confidential marital communication is protected from disclosure to an adverse party during an investigation. Nevertheless, we hold in the circumstances of this case that Griffin cannot claim the privilege.

It is common ground between the parties that if Griffin had sent a letter to his wife not containing any privileged attorney-client or work-product material, prison authorities would have had the right to read the letter. There is no free-standing marital communications privilege, under either federal or state law, allowing a California prisoner to send confidential letters from prison to his or her spouse. The question in this case is whether communications between Griffin and his wife that are protected by neither the attorney-client nor the work-product doctrine, and that would not be protected by the marital communications privilege standing alone, are protected by the marital communications privilege merely because they are placed in an envelope on which Griffin wrote "Attorney at Law." We think they are not.

**[9]** California law nowhere provides that an inmate may correspond confidentially with his or her spouse. *See* Cal. Penal Code § 2601(b). California regulations provide that outgoing nonconfidential mail may be read by prison authorities, as follows:

> All nonconfidential inmate mail is subject to being read in its entirety or in part by designated employees of the facility before it is mailed for or delivered to an inmate.

Cal. Code Regs. tit. 15, § 3138(a). The regulations further provide that an inmate may not use confidential mail to protect nonconfidential correspondence from scrutiny:

> (b)  Confidential correspondence is a right guaranteed by law. *Using the means of confidential correspondence for personal non-business correspondence*, the transmission of contraband items, or the smuggling of letters and other communications to be forwarded to persons not listed in subsection (c) *is an abuse of this right and such*

*proven abuse may be subject to disciplinary action
. . . .*

(c)   Persons . . . with whom inmates may corre-
spond confidentially include:

   . . .

      (6)   An attorney at law listed with a state
      bar association.

Cal. Code Regs. tit. 15, § 3141(b), (c) (emphasis added).

**[10]** Griffin does not argue that the material he seeks to
protect under the marital communications privilege is some-
thing other than "personal non-business correspondence"
within the meaning of § 3141(b). Under these circumstances,
we hold that Griffin has no right to protect from disclosure to
the government as privileged marital communications those
portions of his letters to his wife/attorney that were improp-
erly included in the envelopes on which he wrote "Attorney
at Law."

## Conclusion

For the foregoing reasons, we hold that we have appellate
jurisdiction under both the collateral order doctrine and the
*Perlman* rule. We affirm the order of the district court requir-
ing the special master to deliver the redacted letters and por-
tions of letters from Griffin to his wife that are not protected
by either the attorney-client privilege or the work-product
doctrine.

   AFFIRMED.